UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JUAN JOSE VARGAS GARCIA, MARIO
MORALES ORTEGA, CONRADO RUIZ
RIVERA, JULIAN JACOBO GARCIA, JUAN
HILARIO VENTURA REYES, JUAN MANUEL
PEREZ CORDERO, HECTOR FELIPE TAPIA
DE JESUS, ABEL REYES DAMIAN, JORGE
PEDRO ESTRADA RODRIGUEZ, RAUL
LOPEZ MARTINEZ,

Plaintiff,

-against-

MATTHEW PARK, CHANG Y PARK,
C AND J BROTHERS, INC.

Defendants.
---------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE



**MEMORANDUM AND ORDER**

18-CV-10650 (KNF)

        In this action brought pursuant to the Fair Labor Standards Act of 1948 ("FLSA"), and

various provisions of the New York Labor Law ("NYLL"), the ten plaintiffs, who were employed

by the defendants as "porters/stockers" contend that if the action proceeded to trial and they

succeeded "in all their claims, they would recover approximately $490,544.63," for: 1) unpaid

overtime compensation; 2) unpaid spread-of-hours compensation under NYLL; 3) the

defendants' failure to provide wage notices as required by New York law; 4) interest; and

5) attorney's fees. The defendants maintain that they complied with FLSA and NYLL, have

"provided [the plaintiffs] records signed by Plaintiffs" demonstrating the hours the plaintiffs

worked and their respective rates of pay, and that those records undermined the plaintiffs'

allegations. The plaintiffs challenged the accuracy of the defendants' records and did not concede that they signed those records.

To resolve their dispute, the parties participated in two mediation sessions under the auspices of the court's mediation program. After what the parties characterize as an exchange of "extensive discovery," they reached an agreement, based on arms-length negotiations, to settle their dispute. Under the terms of that agreement, the defendants will pay the plaintiffs $275,000. This sum will be "divided between the 10 Plaintiffs based on the start and end dates, hours worked per week and rate of pay of each . . . Plaintiff." From the settlement fund, the plaintiffs' attorney's fees are to be paid. Before the Court is an application by the parties for the Court to approve their settlement agreement as fair and reasonable, based upon: (a) written submissions they have made to the Court explaining the terms and conditions under which they agreed to resolve the action; and (b) a subsequent conference convened by the Court to explore the agreement with them.

Where parties have entered into an agreement settling FLSA claims, with prejudice, as is the case here, a district court or the United States Department of Labor must approve the parties' settlement agreement before their stipulated dismissal of the action may take effect. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015). The Court's approval responsibility includes determining whether the attorney's fees component of the proposed settlement agreement is reasonable. See 29 U.S.C. § 216(b); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015).

When determining whether to approve a proposed FLSA settlement, courts consider several factors, among them the following: "(1) the plaintiffs range of possible recovery; (2) the

2

extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of an arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)(internal quotation marks and citation omitted). The plaintiffs contend that if they prevail at trial, they are likely to recover approximately $490,544.63; however, it is not certain they will prevail. This is so, in part, because the plaintiffs acknowledge that "evidentiary issues . . . may arise with regard to proving the Plaintiffs' claims." In addition, the defendants have employment records alleged to have been signed by the plaintiffs that the defendants maintain establish their compliance with applicable federal and state wage-and-hour laws. As noted above, the plaintiffs challenge the accuracy of the defendants' records and do not concede that they signed those records. As a consequence, both the plaintiffs and the defendants would face significant risks if the matter proceeded to trial. Furthermore, given that ten plaintiffs, who worked at different times for the defendants in this action have made allegations against the defendants, it is likely that a lengthy and expensive trial would be necessary. The settlement proposed, which was achieved after arms-length negotiations aided by a mediator affiliated with the court's mediation program, allows the parties to avoid the: (1) potential risks they would face at a trial; and (2) time and significant expense that a ten-plaintiff trial would engender. In addition, the $275,000 settlement fund, upon which the parties have agreed, enables the plaintiffs to recover a significant portion of the amount the plaintiffs believe they would recover if they prevailed at trial.

3

"[I]n any case there is a range of reasonableness with respect to a settlement – a range which reorganizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972). The settlement reached in this case is within the range of reasonableness with respect to the best possible recovery by the plaintiffs and the risks that are associated with a trial. Nothing in the record before the Court suggests that fraud or collusion tainted the negotiated disposition the parties achieved. The Court finds that the Wolinsky factors, discussed above, militate in favor of approving the parties' proposed settlement agreement as fair and reasonable. However, the Court's analysis of the proposed settlement agreement does not end there because, as noted above, the Court's approval responsibility includes determining whether the attorney's fees component of the proposed settlement agreement is reasonable. See 29 U.S.C. § 216(b). The attorney's fees sought to be approved here were determined based on the percentage of the fund method; they were not derived by simply performing a lodestar calculation. The attorney's fees component of the parties' proposed settlement agreement is addressed below.

The plaintiffs maintain that their counsel, Brett M. Schatz ("Schatz"), "is an experienced litigator with 12 years of practice in litigating complicated personal injury, wage and insurance coverage matters." According to the plaintiffs, Schatz "has represented plaintiffs in over 25 wage and hour cases involving over 100 plaintiffs under the FLSA and NYLL." The plaintiffs submitted Schatz's contemporaneous time records to the Court. They show that Schatz bills for legal services at the hourly rate of $700. However, the plaintiffs entered into contingency fee retainer agreements with Schatz through which each agreed that Schatz would receive one-third

4

of the sum recovered through this action, whether the recovery was "by suit, settlement or otherwise." Schatz was aided in this action by an unnamed "translator/paralegal," whose hourly rate of compensation is $200. No information about the translator/paralegal's professional background and experience was provided to the Court by the plaintiffs.

At the time the parties made their application for the Court to approve their proposed settlement agreement, the plaintiffs asserted that Schatz spent 127.75 hours representing them in this matter and that the "translator/paralegal" expended 46.25 hours assisting them. The plaintiffs contend that Schatz incurred $700 in disbursements and that when this amount is coupled with fees billed by him and the "translator/paralegal," the "combined total . . . equals $99,375 and constitutes the lodestar." However, the plaintiffs explain that Schatz seeks a fee of $79,166.66, which the plaintiffs maintain is "$20,208.34 less than the lodestar. According to the plaintiffs, their counsel's fee request "is based on the one-third contingency retainer signed by Plaintiffs less $12,500 [an amount by] which [their counsel] agreed to reduce [his] fee . . . during the mediation in order to break a deadlock in the settlement negotiations and to get all parties to agree to settle the matter. In addition, during mediation, [Schatz] agreed to waive requests for disbursements." During the conference the Court held with the parties to discuss their proposed settlement agreement, the Court requested that Schatz submit a writing to it identifying FLSA cases from this judicial district in which the plaintiff's counsel was awarded attorney's fees based on an hourly rate of $700. Schatz responded to the Court on October 3, 2019, and advised that he "was unable to find any cases in this District with awards of $700 per hour in a Fair Labor Standards Act . . . contingency fee case."

5

When exercising their discretion to determine the reasonableness of an attorney's fees, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), see Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190, which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

> Id. at 186-87 n.3.

A reasonable hourly rate is "the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience and reputation." Farbotko v. Clinton Cty., 433 F.3d 204, 208 (2d Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984)). "[T]hus, 'a reasonable hourly rate' is not ordinarily ascertained simply by reference to rates awarded in prior cases." Id. "[E]quation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.

This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." Id. at 209. "[T]he fee applicant has the burden of showing by 'satisfactory evidence – in addition to the attorney's own affidavits' – that the requested hourly rates are the prevailing market rates." Id. (quoting Blum, 465 U.S. at 896 n.11, 104 S. Ct. at 1547 n.11).

A court is not obligated to undertake a line-by-line analysis of counsel's contemporary time records when assessing a fee application. However, a court should exclude from its "initial fee calculation hours that were not reasonably expended." Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939 (1983). In a circumstance where a court's review of counsel's time records leads it to conclude that excessive fees are being sought, the court may exercise its discretion and employ a percentage reduction to trim fat from the fee application. See Marvin S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 150 (2d Cir. 2014).

The Court determined to perform a lodestar calculation as a cross-check on the reasonableness of the percentage of the settlement fund award being proposed by the parties to satisfy the attorney's fees incurred by the plaintiffs. See Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 434 (S.D.N.Y. 2007). In that connection, as noted above, the Court requested that Schatz identify cases from this judicial district where counsel commanded, and were awarded fees based on, an hourly rate of $700 for rendering legal services in an FLSA case. Schatz was "unable to find any cases in this District with awards of $700 in a Fair Labor Standards Act . . . contingency fee" case. Schatz did make citation to an FLSA case from this judicial district, Disla v Signature Cleaning Services, No. 18 Civ. 8319, 2019 U.S. Dist. LEXIS 99957 (S.D.N.Y. June 11, 2019), in which lead counsel billed his time at $650 per hour. The court awarded attorney's

7

fees to lead counsel based on that hourly rate explaining that the lodestar calculation was almost triple the amount of attorney's fees that was requested. The court noted that counsel's hourly billing rate, $650, was on the "higher side" of the billing rates of counsel handling FLSA cases in this judicial district. Disla, 2019 U.S. Dist. Lexis 99957, at *5. No information regarding the Disla lead attorney's background, and experience is mentioned in the court's order; therefore, whether that attorney is comparable by way of background, experience and reputation to Schatz, is unknown.

The Court's familiarity with recent attorney's fees awards to experienced attorneys in FLSA cases litigated in this judicial district, leads it to conclude that attorney's fees awards predicated on hourly rates of $400 are commonly made. See, e. g., Pugh v. Meric, No. 18-CV-3556, 2019 WL 3936748, at *4 (S.D.N.Y. Aug. 20, 2019)($400 hourly rate approved for counsel with 25 years experience); Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018)($400 hourly rate approved for counsel with approximately 12 years experience handling FLSA cases in federal court);[1] Guang Ping Zhu v. Salaam Bombay, Inc., No. 16-CV-4091, 2019 WL 76706, at *1-2 (S.D.N.Y. Jan. 2, 2019)($400 hourly rate approved for counsel with 28 years experience who, since 2008, has been litigating FLSA and NYLL wage-and-hour cases exclusively). The Court is also aware that recently in an FLSA case in this judicial district, a court approved a fee award for a lawyer with 32 years experience handling wage-and-hour cases who bills at an hourly rate of $600. See Williams v. Epic Security Corp., 368 F. Supp. 3d 651 (S.D.N.Y. 2019).

---

[1]The Court determined counsel's experience in Gamero from information about counsel detailed in Sevilla v. Nekasa, No. 16 Civ. 2368, 2017 WL 1185572, at *4 (S.D.N.Y. March 30, 2017).

The record before the Court shows that Schatz has 12 years experience litigating personal injury, insurance coverage and wage matters. During those 12 years Schatz has handled at least 25 wage-and-hour cases. However, as hourly rates of $600 or more for attorneys handling FLSA-related actions in this judicial district are uncommon, and are at the "higher side" of the range of hourly rates approved by courts in this judicial district, the Court finds that the $700 hourly rate at which Schatz billed his time for the legal services rendered in this FLSA action is not a reasonable hourly rate because it exceeds greatly the hourly rate prevailing in this judicial district for similar services provided by lawyers whose experience handling FLSA cases exceed Schatz's. See Farbotko, 433 F.3d at 208. Therefore, the plaintiffs' reliance on the $700 hourly rate in performing their lodestar calculation did not yield a number that provides a valid cross-check for the percentage of the fund method used in this case to determine the attorney's fees component of the parties' proposed settlement agreement. Based on the facts of this case, which Schatz prosecuted on behalf of ten plaintiffs without the assistance of another attorney, the hourly rates awarded in FLSA cases in this judicial district handled by counsel with more experience than Schatz, as well as the successful outcome achieved by Schatz for the ten plaintiffs, the Court finds that using an hourly rate of $425 to calculate the lodestar for the legal services rendered by Schatz to the plaintiffs is reasonable and appropriate.

The Court reviewed the billing records submitted by the plaintiffs for the work performed by Schatz and found, in a number of instances, vague entries for work he performed. For example, "E-mail" appears numerous times as an entry on Schatz's billing records without any indication of the subject matter of the email message, the person(s) to whom the email message was sent or the relationship if any the email message had to the litigation. Vague entries are not

9

sufficient to substantiate a claimed expenditure of time. See Gamero, 328 F. Supp. 3d at 175. The Court also found entries where work performed by Schatz should have been assigned to less expensive clerical staff. For example, on December 7, 2018, Schatz billed time for printing, stapling and organizing documents. The inefficient and uneconomical expenditure of Schatz's time reflected in the billing records, the multiple vague entries in those records and the unreasonable hourly rate at which Schatz billed for the legal services he rendered to the plaintiffs support a reduction in the number of hours used to calculate the lodestar.

The Court also considered the $200 hourly rate at which the "translator/paralegal" billed for the services rendered to the plaintiffs, to determine how it compares to the hourly rates awarded for paralegal services in other FLSA cases litigated in this judicial district. The hourly rate billed by a paralegal like the hourly rate billed by an attorney must be reasonable. Courts, in recent FLSA cases in this judicial district, have approved, as reasonable, hourly rates in the range of $100-$150 for paralegal services. See, Rosales v. Gerasimos Enters., No. 16-CV-2278, 2018 WL 286105, at *2 (S.D.N.Y. Jan. 3, 2018). The Court has observed that $100 is commonly awarded for paralegal services. See, e. g., Montalvo v. Arkar Inc., No. 17-CV-6693, 2018 WL 2186415, at *2 (S.D.N.Y. May 10, 2018)($100 hourly rate for paralegal); Canaveral v. Midtown Diner NYC, Inc., No. 19-CV-635, 2019 WL 4195194, at *8 (S.D.N.Y. Sept. 5, 2019)($100 hourly rate for paralegal).

As noted above, the "translator/paralegal" who billed at the hourly rate of $200 for services rendered in this case is not identified by the plaintiffs and the plaintiffs did not supply information about the translator/paralegal's background and experience. Therefore, it is not possible for the Court to assess the background and experience of the "translator/paralegal"

employed in this case and compare the translator/paralegal's background and experience with the backgrounds and experiences of paralegals employed in other FLSA cases litigated in this judicial district. When a party fails to provide a court with relevant background and experience information concerning a paralegal, a reduction in the rate billed by the paralegal may be made by the court. See Spalluto v. Trump Int'l Hotel & Tower, No. 04 Civ. 7497, 2008 WL 4525372, at *14 (S.D.N.Y. Oct. 2, 2008); Rosales, 2018 WL 286105, at *2. In this case, the Court concludes that approving an hourly rate for paralegal services that is outside the range of hourly rates typically approved for paralegal services in this judicial district, is not reasonable. Therefore, the Court has determined to reduce from $200 to $100 the hourly rate for the services rendered to the plaintiffs by the "translator/paralegal."

When entries on a paralegal's billing records are vague, a court may reduce the number of hours claimed in a fee application just as it is allowed to do when entries in an attorney's billing records are vague. In the instant case, the translator/paralegal's billing records have many vague entries. These entries indicate that the "translator/paralegal" participated in telephone calls and rendered translation services; however, the billing records do not identify with whom the "translator/paralegal" spoke and for whom the translation services were performed. Due to the number of vague entries in the translator/paralegal's billing records, the Court has determined to reduce the number of hours claimed by the "translator/paralegal" in connection with this action.

To address the vague entries in the billing records, the Court has determined to reduce by 2%, across-the-board, the hours claimed by Schatz and the "translator/paralegal." See Canaveral, 2019 WL 4195194, at *8. In deciding to take this modest reduction in the number of hours expended on behalf of the plaintiffs, the Court took into account its overall sense of the case and

11

the need to arrive at the reasonable number of hours that were expended prosecuting this case on behalf of the plaintiffs. Applying a 2% across-the-board reduction to the hours expended by Schatz and the "translator/paralegal" on behalf of the plaintiffs yields 125.20 hours for Schatz and 45.33 hours for the "translator/paralegal." Using these hours, Schatz's compensation will be $53,210 (125.20 X $425) and the translator/paralegal's compensation will be $4,533 (45.33 X 100). This yields a lodestar of $57,743. The lodestar calculated by the Court, $57,743, is $40,932 less than the lodestar of $98,675 calculated by the plaintiffs. However, the plaintiffs' lodestar calculation was made based on unreasonable hourly rates billed by Schatz and the "translator/paralegal." The lodestar calculated by the Court, $57,743 is 21% of the $275,000 settlement fund amount.

The presumptively reasonable fee calculated by the Court, $57,743, is $21,423.66 less than the $79,166.66 for attorney's fees proposed by the parties in their settlement agreement. The presumptively reasonable fee, $57,743, is also less than one-third of the $275,000 settlement fund; but, as noted above, compromises have already been made by the parties during their mediator-led negotiations, including Schatz's decision to reduce his fee by $12,500, that resulted in a modification to the percentage of the settlement fund that the plaintiffs' retainer agreement with Schatz obligated them to pay to him for the legal services rendered to them in this action. Based upon the totality of the circumstances in this case, the Court concludes that $57,743 is the reasonable and fair amount to be awarded as attorney's fees for the legal services rendered to the plaintiffs in this action. Therefore, the Court finds that approving the parties' proposed settlement agreement, as reflected at Docket Entry No. 28-1, is not warranted because that agreement contemplates an award for attorney's fees that is not reasonable and fair. The parties

12

shall submit, expeditiously, to the Court, for its endorsement, a revised, fully executed, stipulated

settlement agreement, which provides for a payment to Schatz of $57,743 for attorney's fees.

## CONCLUSION

For the reasons stated above, the parties' application, that the Court approve their

proposed settlement agreement, Docket Entry No. 23, is denied, without prejudice.

Dated: New York, New York        SO ORDERED:
        November 15, 2019

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

13